UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SARAH and REGINA ALONSO,

Plaintiffs,

v.

JAMES JACKSON, also known online as "ONISION," LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI," and NESIAMOTU, Inc.,

Defendants.

CASE NO. 3:25-cv-05594-JHC

ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on Defendants' Motion to Dismiss and Motion for Severance of Claims (Dkt. # 224), and Motion for Sanctions (Dkt. # 237). The Court has considered the materials filed in support of and in opposition to the motions, the record, and the applicable law. Being fully advised, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss and DENIES Defendants' motion to sever claims. And the Court DENIES Defendants' Motion for Sanctions.

ORDER - 1

## II

### BACKGROUND

A.    Factual Background

The following is alleged in Plaintiffs' operative Consolidated Third Amended Complaint (CTAC).  *See* Dkt. # 193.

Defendant James Jackson operated a YouTube channel under the moniker "Onision," alongside his now-spouse Defendant Lucas Jackson, who went by the online names "Laineybot," "Lainey," or "Kai."[1]  Dkt. # 193 ¶¶ 69–70.  Defendant Nesiamotu, Inc. is a Washington State corporation that Defendants used to operate their YouTube channel.  *Id.* ¶ 71.  Plaintiffs Regina Alonso and "Sarah" (a pseudonym, *see* Dkt. # 13) are residents of Florida and Michigan respectively.  Dkt. # 193 ¶¶ 60–63.

Onision has operated a YouTube account since January 2006.  *Id.* ¶ 150.  This YouTube account "targeted underage girls and provided content that appealed to that age group, such as comments on body image, appearance, self-identity, suicide ideology and similar topics."  *Id.* ¶ 152.  Onision began a relationship with Lainey in 2012, when the latter was a minor, and then married Lainey later that year.  *Id.* ¶¶ 180, 183.  Around that time, Onision began operating online forums, which he promoted in his videos to boost his fandom.  *Id.* ¶ 187.

In September 2012, Plaintiff Regina Alonso, then 14 years old, became a fan of Onision's YouTube videos and began interacting with Lainey on Instagram.  *Id.* ¶¶ 205–207.  Regina and Lainey would speak daily, and eventually, Regina became a moderator of the Onision Forums.  *Id.* ¶¶ 210, 213.  The relationship developed further, and when Regina was 17 years old, Lainey

---

[1] When referring to Defendants individually, this order uses interchangeably James Jackson and "Onision," and Lucas Jackson and "Lainey."  When referring to James and Lucas Jackson collectively, this order uses "the Jackson Defendants" or simply "Defendants."

ORDER - 2

posted messages to Twitter stating that the two were "dating." *Id.* ¶ 227.  Lainey posted another message stating, "in other news, i'm totes sending regina nudes rn" (sic) and posted a screenshot of an apparently suggestive text message exchange with a contact labelled "Regina." *Id.* ¶ 228. Lainey would request and receive nude photographs from Regina. *Id.* ¶¶ 230, 233–234.  And in 2015, Lainey encouraged Regina to visit Lainey and Onision in Washington state and offered to pay for Regina's travel expenses. *Id.* ¶¶ 236–37.  But Regina's mother did not permit her to travel, i*d.* ¶ 240, and Regina did not visit Onision or Lainey, *see generally id.*

Plaintiff Sarah became a fan of Onision and Lainey's videos at age 13 and began to interact with Lainey on Twitter. *Id.* ¶ 245.  Sarah also joined an online group chat for fans of the couple moderated by Regina. *Id.* ¶¶ 246–47.  Lainey contacted Sarah about a year later, after asking Regina if her friend Sarah was trustworthy. *Id.* ¶¶ 249–51.  At the time, Sarah was 14 years old. *Id.* Lainey, Sarah, and Regina formed a group chat together titled "The Three Musketeers." *Id.* ¶ 256.  In this group chat, Lainey, Sarah, and Regina discussed sexualized and explicit topics. *Id.* ¶¶ 258–60, 262.  On September 15, 2016, Sarah, then 16, flew to Washington on Lainey's invitation and returned to Michigan after a few days. *Id.* ¶ 275, 277, 283.  After this first trip, Sarah's mother awarded Lainey "guardianship" of Sarah. *Id.* ¶ 284–85.  Later, Sarah made five trips at Defendants' invitation and expense between 2016 and 2018. *Id.* ¶¶ 56, 287, 305–06, 308, 310, 331.  During these trips, Onision, and at times Lainey, would physically touch Sarah in a sexual manner. *Id.* ¶¶ 291–97, 303.

In August 2018, Sarah turned 18. *Id.* ¶ 277 (describing Sarah's birthday as falling on August 15).  In January 2019, Sarah, coerced by Defendants, posted a video online stating that "she did not engage in sexual relations while underage." *Id.* ¶¶ 335–36.  Sarah then traveled back to Defendants' residence, where Defendants forced her into a sexual encounter soon after

ORDER - 3

her arrival. *Id.* ¶¶ 344–66. She was then coerced into signing an "NDA"[2] before returning to Michigan. *Id.* ¶¶ 369, 374. Sarah made three more visits to Defendants in 2019. *Id.* ¶¶ 378–79, 382. Later in 2019, after Sarah's final visit to Defendants' residence, Onision began posting videos online stating that Sarah had sexually assaulted him and was also blackmailing him. *Id.* ¶¶ 384, 390–91, 396.

B.      Procedural Background

This case's procedural history is complex. In 2023, Plaintiffs filed separate suits against Google, its subsidiary YouTube (collectively, the YouTube Defendants), and the Jackson Defendants in Florida and Michigan. That fall, both cases were transferred to separate judges in the United States District Court for the Northern District of California. Plaintiffs amended their complaint several times, and on November 1, 2024, both cases were reassigned to the same judge. Dkt. # 162. In March 2025, Plaintiffs' cases were consolidated, Dkt. # 189. Plaintiffs then jointly filed the CTAC. *See* Dkt. # 193.

On June 24, 2025, the California district court granted the YouTube Defendants' motion to dismiss and transferred the case to this Court. *See* Dkt. # 210. After the dismissal, these claims from the CTAC survive: Counts I and II (Plaintiff Alonso's claim under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1591, 1595), Counts III, IV, and V (Plaintiff Alonso's claims under 18 U.S.C. § 2255, known as "Masha's Law"), Counts VI, VII, VIII, and IX (Plaintiff Sarah's TVPRA and related Masha's Law claims), Count X (Plaintiff Sarah's defamation per se claim against Defendant James Jackson), and Count XII (Plaintiff Sarah's California civil claim under California Code of Civil Procedure § 340.16 against the

---

[2] The CTAC does not state the title of the document. Defendants have attached to their motion to dismiss an image of a document bearing the title "Mutual Non-Disclosure Agreement" signed by "Sarah" with the last name redacted and "Gregory Avarog" or "Averoe," dated January 18, 2019. Dkt. # 224-6 at 8–9. Defendants represent that this document is a copy of the NDA as executed by Sarah and Defendants.

ORDER - 4

Jackson Defendants).[3]  Because the California court also terminated Defendants' then-pending motion to dismiss, *see* Dkt. # 212, Defendants filed another motion to dismiss, which is now before the Court.  *See* Dkt. # 224.  That dismissal motion also includes a request that this Court sever the plaintiffs' claims from each other.  After moving to dismiss, Defendants moved for sanctions against Plaintiffs' counsel.  *See* Dkt. # 237.

## III

### DISCUSSION

A.    Defendant's Motion to Dismiss

The bulk of Defendants' motion seeks dismissal of Plaintiffs' claims.

1.    Motion to dismiss standards

Rule 12(b)(6) applies to motions to dismiss for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, "the district court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party."  *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citing *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994)).  It must also draw all reasonable inferences in favor of the nonmoving party.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  Dismissal is proper only if the

---

[3] In the CTAC, Plaintiffs' counsel appears to cite California Penal Code § 340.16, but no such provision in the California Penal Code exists.  It appears that counsel intended to cite the Civil Code.

ORDER - 5

plaintiffs have not alleged a "cognizable legal theory" or there is an "absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When evaluating a motion to dismiss, the court considers the complaint but may also consider other materials, such as "documents attached to the complaint, documents incorporated by reference in the complaint, [and] matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

2.    Analysis

Defendants say that the Court should dismiss Plaintiffs' TVPRA and related federal claims because the CTAC does not allege a "commercial sex act," "trafficking venture," or any predicate offenses involving a minor. Dkt. # 224 at 8–11. Defendants make the same argument about Plaintiffs' state-law claims "for defamation, emotional distress, and related torts," *id.* at 11, but also appear to argue that, if the Court dismisses Plaintiffs' federal claims, it should also decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims under Rule 12(b)(1). *See id.* at 6–8. Defendants' motion to dismiss does not address Plaintiff Sarah's California civil claim, though it does seek dismissal of the entire CTAC. Defendants also say that Plaintiffs' TVPRA claims sound in fraud and do not meet the particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b). *Id.* at 9.

Plaintiffs respond that Defendants' motion to dismiss is untimely. *See* Dkt. # 232 at 6–7. Plaintiffs say that Defendants had 21 days from July 8, 2025—the date that the order transferring the case from California to Washington federal court became final—to file an answer or a motion to dismiss, which computes to July 29, 2025. *Id.* at 6 (citing Fed. R. Civ. P. 12(a)(1)(A)(i)). Defendants did not request any extension and filed the present motion to dismiss

on August 12, 2025.  Plaintiffs also contend that even if the Court accepts Defendants' Motion as timely, it should fail substantively, as the CTAC plausibly pleads TVPRA and Masha's Law claims as well as the other state claims under Rule 12(b)(6).  *Id.* at 9–13.

As for Plaintiffs' timeliness argument, the Court will consider Defendants' dismissal motion.  In the Ninth Circuit, parties may generally file a Rule 12(b) motion at "any time before the responsive pleading is filed."  *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988).  "[A]s long as a party is not in default, courts have considered late motions to dismiss even when no responsive pleading has been filed and no extension for filing granted by the court."  *Atigeo LLC v. Offshore Ltd., D*, 2014 WL 239096, at *3 (W.D. Wash. Jan. 22, 2014) (collecting cases).  The Court also considers that pro se litigants are "entitled to some latitude and leniency with procedural matters."  *Perrotte v. Johnson*, 2017 WL 35499, at *3 (E.D. Cal. Jan. 3, 2017) (citing *Haines v. Rowe*, 449 U.S. 5, 9 (1980)).  Defendants are not in default, and Plaintiffs do not appear to be prejudiced by the 14-day delay.

Next, the Court notes that attached to the dismissal motion are two affidavits by Defendants.  *See* Dkt. ## 224-1, 224-2.  Defendants appear to have attached about 200 exhibits to these affidavits, and they cite them throughout their dismissal motion.  But on a motion to dismiss, the Court may only consider the pleadings and matters of judicial notice.  *See Atigeo*, 2014 WL 239096, at *4 (rejecting the defendants' attempt to "supplement the pleadings" by attaching a declaration to a motion to dismiss) (citing *Ritchie*, 342 F.3d at 908).  The Court thus declines to consider the documents at Dkt. ## 224-1 through 224-10 in its resolution of this motion.

Finally, as for the substance of Plaintiffs' claims, the Court notes that Defendants make no specific dismissal arguments for the claims in Count XII (the California sexual abuse claims).  Because the Court sees no reason to dismiss these claims sua sponte, it declines to dismiss them

and does not address them below.  The Court considers each of Plaintiffs' remaining claims in turn.  For the reasons below, the Court concludes that the CTAC alleges sufficient factual matter for each claim to survive a motion to dismiss.  It thus DENIES Defendants' Motion to Dismiss in full.

### a.    Plaintiffs' TVPRA claims

Section 1591 of the TVPRA provides criminal penalties for anyone who knowingly "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . who has not attained the age of 18 years" to "engage in a commercial sex act."  Under § 1591(b)(2), anyone who benefits from such activity may also be liable.  A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  Section 1595 of the Act provides for civil remedies for violating Section 1591.  In an unpublished opinion, the Ninth Circuit recognized that the term "commercial sex act" under Section 1591 is not "limited to sexual intercourse for money."  *United States v. Bazar*, 747 Fed. App'x 454, 456 (9th Cir. 2018).[4]  And a court in the Ninth Circuit has determined that a quid pro quo is not required.  *See Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 772 (C.D. Cal. 2024) ("The coexistence of the sex act and the thing of value is the exchange necessary to satisfy a commercial sex act" under the TVPRA).  Another has noted that Sections 1591 and 1595 "contain expansive language that the courts should

---

[4] Defendants cite *United States v. Todd*, 627 F.3d 329, 334–35 (9th Cir. 2010), for the proposition that the TVPRA requires "specific evidence of commercial activity," but as discussed below, Plaintiffs do allege such activity within the meaning of the statute.  Defendants also cite *Doe v. Twitter*, 555 F. Supp. 3d 889, 917–18 (N.D. Cal. 2021), *aff'd in part, rev'd in part and remanded sub nom. Doe # 1 v. Twitter, Inc.*, 2023 WL 3220912 (9th Cir. May 3, 2023), in support of the proposition.  But in *Doe*, the court dismissed the plaintiff[s]' TVPRA claims under 47 U.S.C. § 230, the statute absolving content-hosting platforms from civil liability in certain cases.  Because the Jackson Defendants are not content-hosting platforms, *Doe* is also not on point.

ORDER - 8

interpret broadly." *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1024 (D. Or. 2021).

Plaintiffs proceed under 18 U.S.C. § 1595, which provides for civil remedies for anyone who "is a victim of a violation of [Section 1591] "against the perpetrator (*or* whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter" (emphasis added).  Thus, Section 1595 allows for civil remedies against both those who directly perpetrate acts proscribed under § 1591 and those who "knowingly benefit[] or conspire[] to benefit" from those acts.  *Id.*

The CTAC sufficiently pleads a TVPRA claim for Plaintiff Alonso.  She alleges "upon information and belief" that she was invited to travel from Florida to Defendants' home in Washington "so that [Onision] could engage in sexual acts" with her.  *Id.* ¶ 239.  Plaintiffs may plead on information and belief "where the belief is based on factual information that makes the inference of culpability plausible."  *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  Plaintiffs' belief appears to be based on allegations that Defendants requested and received nude photographs from Plaintiff Alonso, that Defendant Lainey appeared topless in video calls, and she texted lewd commentary to Plaintiff.  *See* Dkt. # 193 ¶¶ 229–235.  Thus, Plaintiff has alleged facts sufficient to demonstrate that Defendants "entice[d]" or solicit[ed]" Plaintiff Alonso for sex acts.  The CTAC also sufficiently alleges something of value: Defendants offered to pay for all of Alonso's travel expenses, *id.* ¶ 237, and made her a volunteer forum moderator, which was either personally significant to her and/or saved the Jackson Defendants the cost of paying an actual moderator or doing the work themselves.  *See id.* ¶ 416.  Thus, Plaintiff has sufficiently alleged

that the Jackson Defendants "entice[d]" or solicit[ed]" Plaintiff "to engage in a commercial sex act."

The CTAC also sufficiently alleges TVPRA claims for Plaintiff Sarah. As alleged, Plaintiff Sarah received several free trips, lived at the Jackson Defendants' expense while staying with them, and appeared in several of their monetized YouTube videos,[5] all before the age of majority in 2016. *See* Dkt. # 193 ¶¶ 495, 535. During one such trip, the Jackson Defendants touched her in a sexual manner several times. *See* Dkt. # 193 ¶¶ 293–95. Thus, the CTAC plausibly alleges that the Jackson Defendants "transport[ed]" a minor for a "commercial sexual act," where the "commercial" element is satisfied by the value of the trips, Sarah's maintenance at their home, and her appearances in the monetized YouTube videos. 18 U.S.C. § 1591.

Defendants also argue that Plaintiffs have not pleaded a venture or the use of force, fraud, or coercion. *See* Dkt. # 224 at 8–9. But Defendants may be subject to perpetrator liability under § 1595, which does not require that Plaintiffs plead a venture. Plaintiffs have also alleged that they were minors when they were initially subject to Defendants' conduct, which obviates any force, fraud, or coercion requirement in Section 1591. *See* Dkt. # 193 ¶¶ 226–27 (Plaintiff Regina); *id.* ¶ 277 (Plaintiff Sarah).

Last, TVPRA claims are not fraud claims and Rule 9(b) does not apply. *See, e.g.*, *Acevedo*, 713 F. Supp. 3d at 762 (applying Federal Rule of Civil Procedure 8 to a TVPRA claim).

---

[5] The Jackson Defendants' YouTube channels were monetized when Sarah appeared in them. *See* Dkt. # 193 ¶¶ 31–32; *id.* ¶ 146 (alleging that Onision's YouTube videos were monetized until January 2021).

ORDER - 10

b.      Plaintiffs' Masha's Law claims

Masha's Law, 18 U.S.C. § 2255, provides for civil remedies for any "person who, while a minor, . . . suffers personal injury as a result" of several predicate offenses "regardless of whether the injury occurred while such person was a minor."  These predicate offenses include, as pertinent here, 18 U.S.C. §§ 1591 (applied above), 2422, which prohibits the actual or attempted inducement or enticement of anyone to travel across state lines to engage in "any sexual activity for which any person can be charged with a criminal offense," and 2252A, which prohibits the receipt or distribution of child pornography.  Child pornography consists of depictions of minors "engaging in sexually explicit conduct," 18 U.S.C. § 2252A(a)(3)(B), which in turn means actual or simulated sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256.  Courts have generally held that a defendant need not have been convicted of the predicate offense for liability under Masha's Law, "although this question of law has not been fully developed in [the Ninth] Circuit."  *See E.M. v. Varsity Brands, LLC*, 2024 WL 2808183, at *6 (C. D. Cal. May 31, 2024) (collecting cases); *accord Elden v. Nirvana, L.L.C.*, 802 F. Supp. 3d 1211, 1221 n.8 (C.D. Cal. 2025).

The CTAC brings Masha's Law claims for Plaintiff Alonso under each of the three predicate offenses listed above.  It alleges personal injuries flowing from Defendants' actions,[6] Dkt. 193 ¶¶ 442–44, and that Alonso was a minor when the actions occurred, *id.* ¶ 61, both requirements of Masha's Law under any predicate offense.  As discussed above, Plaintiff Alonso

---

[6] Defendants say that Plaintiffs "must allege a causal link between a predicate offense and a specific injury" under Masha's Law.  In support of this proposition, they cite *Doe v. Schneider*, 667 F. Supp. 2d, 524, 533 (E.D. Pa. 2009).  *See* Dkt. # 224 at 11.  But *Doe* is not binding on this Court.  It also does not provide any support for Defendants' proposition.  See *id.* at 533 (discussing an intentional infliction of emotional distress claim).

ORDER - 11

has sufficiently pleaded a Section 1591 claim. Second, Plaintiff Alonso also sufficiently pleads a Masha's Law claim under Section 2242. She alleges that Defendant Lucas Jackson offered to pay for then-minor Plaintiff Alonso to visit Defendants in order to have sex with her. *See* above at 9–10 (citing Dkt. # 193 at ¶¶ 236–39). Sex with Plaintiff Alonso at that time, along with the other alleged circumstances, would be a violation of Section 1591, which is a crime. Thus, with respect to those two predicates, Plaintiff Alonso has sufficiently alleged a Section 2242 violation. But her Masha's Law claim predicated on Section 2252A must be dismissed because the nude photographs she alleges were exchanged do not appear to satisfy the statutory definition of child pornography. She alleges that the images depicted her "exposed breasts" and "exposed buttocks," Dkt. # 193 ¶¶ 233–34, but she does not allege that they show any "sexually explicit conduct" involving sexual intercourse or a "lascivious exhibition of the anus, genitals, or pubic area." 18 U.S.C. § 2256. Because the exchanged images were not "child pornography" under the statutory definition, her Masha's Law claim under that predicate offense fails. Thus, the Court GRANTS Defendants' motion to dismiss with respect to Count III of the CTAC (Dkt. # 193 ¶¶ 432–445).

The CTAC brings Masha's Law claims for Plaintiff Sarah under Sections 1591 and 2242. She also alleges personal injury (Dkt. # 193 ¶¶ 537–42) and that she was a minor when she suffered the harm (*id.* ¶ 63). As discussed above, Plaintiff Sarah has sufficiently pleaded a Section 1591 claim. The same facts also support a Section 2242 claim: She alleges that Defendants persuaded her to travel to Washington state to engage in a commercial sex act under Section 1591. *See id.*[7].

---

[7] Plaintiffs' brief in opposition states that Plaintiffs alleged the Masha's Law predicate offense of aggravated sexual abuse under Section 2241. *See* Dkt. 232 at 12. But Plaintiffs have not alleged a Section 2241 violation in their complaint. *See generally* Dkt. # 193.

ORDER - 12

c.    Plaintiff Sarah's defamation claim

Under Washington common law, a plaintiff must plead four elements to make out a claim for defamation: a false statement, its publication, fault, and damages. *See Duc Tan v. Le*, 177 Wash.3d 649, 662, 300 P.3d 356 (Wash. 2000). "Defamation per se" occurs when a statement is defamatory "on its face" or "actionable without proof of special damage." *Caruso v. Loc. Union No. 690 of the Int'l Bhd. of Teamsters*, 100 Wash.2d 343, 353, 670 P.2d 240 (Wash. 2000). "The imputation of a criminal offense involving moral turpitude has been held to be clearly libelous per se," *id.*, notwithstanding that whether a given communication constitutes defamation or libel per se can generally be either a question of law or fact, in the latter case decidable by a jury. *See Maison de France, Ltd. v. Mais Oui!, Inc.*, 126 Wash. App. 34, 43, 108 P.3d 787 (Wash. Ct. App. 2005).

Under this standard, the CTAC pleads defamation per se. Plaintiff Sarah alleges that Defendant James Jackson published YouTube videos in 2022 in which he stated that Plaintiff Sarah was "sexually extort[ing]" him, that she had raped him and was a rapist, and that she is a known criminal and felon. *See, e.g.*, *id.* ¶¶ 570–75. These statements impute a criminal offense of moral turpitude onto Plaintiff Sarah, which could constitute defamation per se if Plaintiff can also prove that the statements were made. *Cf. Caruso*, 100 Wash.3d at 353.

Defendants suggest that Plaintiff Sarah must show "severe emotional distress or outrageous conduct" to make out a defamation claim. But Defendants' cited case discusses the tort of outrage, not defamation. Dkt. # 224 at 11–12 (citing *Kloepfel v. Bokor*, 149 Wash.2d 192, 196, 66 P.3d 630 (Wash. 2003)). Defendants also suggest that they possess evidence implying that Defendant James Jackson's statement was true, which would be an absolute defense. *Id.* at 12 (arguing that Sarah's claims "suggest[] the victimization of the Jacksons"); *see Maison de France*, 126 Wash. App. at 45 ("Truth is an absolute defense to a per se defamatory statement.").

ORDER - 13

But that evidence, even assuming it is evidence, may not be considered when evaluating their motion to dismiss. *See Ritchie*, 342 F.3d at 908.[8] Last, Defendants claim that Plaintiff's defamation action is time-barred under Revised Code of Washington 4.16.080, which provides for a two-year limitations period for most tort actions. But the CTAC alleges that the most recent defamatory statement occurred in 2025, which falls within the two-year limitations period. *See also Eastwood v. Cascade Broad. Co.*, 106 Wash. 2d 466, 469, 722 P.2d 1295 (1986) (applying two-year statute of limitations under RCW 4.16.080 to a defamation action).[9] (limitations period for civil remedies under the TVPRA); *see* 18 U.S.C. § 2255(b) (Masha's Law limitations period).

B.      Defendants' Motion for Severance of Claims

Defendants also move to sever Plaintiff Regina's and Plaintiff Sarah's claims. Though Defendants do not state as much, the Court understands Defendants' severance motion as offered as an alternative remedy to dismissal, since dismissal of Plaintiffs' claims would obviate the need to sever them. The California federal court consolidated Plaintiffs' cases into one under Federal Rule of Civil Procedure 42(a). *See* Dkt. # 189. It considered and overruled Defendants' objections and renewed objections to that consolidation. *See* Dkt. # 192 (minute order). Defendants argue that, under Federal Rules of Civil Procedure 20 and 21, Plaintiffs' claims should be severed because of their differing subject matter, their lack of shared evidence or legal theory, and the risk of jury confusion. *See* Dkt. # 224 at 12–14. Plaintiffs respond that the cases

---

[8] Defendants suggest that "police reports" are judicially noticeable, but they cite no authority for this proposition, nor is the Court aware of any. *See, e.g.*, Dkt. # 224 at 2–3, 12.

[9] Defendants also state in their brief that "Regina's 2012–2016 allegations and Sarah's 2016–2019 allegations pre-2020 are barred by 2023, as her awareness by 2019 forecloses tolling under RCW 4.16.340." Dkt. # 224 at 12. If this is a timeliness argument about any of Plaintiffs' TVPRA or Masha's Law claims (it appears in the same paragraph arguing against the timeliness of Plaintiff Sarah's defamation claim), TVPRA claims have a ten-year limitations period and Masha's Law claims may be brought at any time. *See* 18 U.S.C. § 1595(c).

ORDER - 14

were consolidated by order of the California district court and so their joinder is law of the case and may not be reconsidered by this Court.

Federal Rule of Civil Procedure 20 permits joinder of parties if, as relevant here, their claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20. Rule 21 permits severance of joined parties "at any time, on just terms." Fed. R. Civ. P. 21. And Rule 42 permits consolidation of cases if they "involve common questions of law or fact." *See* Fed. R. Civ. P. 42.

Defendants' argument lacks merit. Plaintiffs are correct that the law-of-the-case doctrine prevents this Court from severing Plaintiffs' cases. "Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988). Transferee courts, like this Court, are still bound by the law of the case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (law-of-the-case doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions."). The California district court considered and overruled Defendants' objections to the consolidation order. *See* Dkt. # 189. Thus, the consolidation of Plaintiffs' actions is the law of the case, and the Court DENIES Defendants' motion to sever. Even if the consolidation were not law of the case, the actions involve "common questions of law" and arise out of the same "series of transactions or occurrences" between the Jackson Defendants and teenage consumers of their online content, namely, Plaintiffs. *See* Fed. R. Civ. P. 20.

ORDER - 15

C.    Defendants' Motion for Sanctions

1.    Legal Standard

The Court may sanction parties or their lawyers under Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court; under 28 U.S.C. § 1927, which seeks to penalize conduct that unreasonably and vexatiously multiplies the proceedings; or under the court's inherent power. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

2.    Analysis

Defendants move for sanctions against Plaintiffs' counsel under Rule 11, 28 U.S.C. § 1927, and under the Court's inherent power. *See* Dkt. # 237. This is Defendants' second motion for sanctions: Defendants' first sanctions motion (Dkt. # 147) was denied by the California federal court in which the action was previously filed. *See* Dkt. # 159. The Court likewise denies Defendants' Motion for Sanctions, Dkt. # 237, here.

Defendants argue that Plaintiffs' counsel made filings "without any factual foundation that could survive even minimal pre-filing inquiry" and that the factual allegations in the complaint are at points contradictory, justifying sanctions. *See* Dkt. # 237 at 12–13. But Rule 11 sanctions are merited "only in the most egregious situations." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001) (citations omitted). The allegations in the CTAC are colorable and do not come close to the standard necessary to invoke Rule 11 sanctions. The Court thus declines to impose sanctions under Rule 11.

Next, Defendants argue that Plaintiffs' counsel made frivolous, multiplicative filings in Plaintiffs' home states of Florida and Michigan in violation of 28 U.S.C. § 1927. *See* Dkt. # 237 at 13–14. This argument lacks merit. A plaintiff may bring TVPRA and Masha's Law claims in any appropriate federal district court. *See* 18 U.S.C. § 1595(a) (TVPRA); 18 U.S.C. § 2255 (Masha's Law). And a "substantial part of the events" alleged in the CTAC and the

ORDER - 16

corresponding harm suffered by Plaintiffs took place in Florida and Michigan, permitting jurisdiction in the districts where Plaintiffs' original complaints were filed. *See* 28 U.S.C.A. § 1391(b)(2). The actions were only transferred to California federal court based on a forum selection clause between Plaintiffs and the now-dismissed YouTube Defendants. So 28 U.S.C. § 1927 does not provide a basis for sanctions here.

Defendants also request sanctions under the Court's inherent authority. *See* Dkt. # 237 at 8–9. For this, Defendants point to alleged "extortion" attempts by Plaintiffs' counsel, which strike the Court, as Plaintiffs say in their response brief, as settlement negotiations. *See* Dkt. # 244 at 14. The rest of Defendants' arguments on inherent authority repeats their arguments about forum-shopping and multiplicative litigation. These arguments, addressed above, have no merit. The Court thus declines to sanction Plaintiffs' counsel under its inherent authority.

As the Court concludes that none of Defendants' cited authority justifies imposing sanctions here, it DENIES Defendants' Motion for Sanctions in full.

## IV

### CONCLUSION

For the reasons above, the Court GRANTS Defendants' motion to dismiss with respect to Count III of the CTAC. *See* Dkt. # 193 ¶¶ 432–445. The Court DENIES the rest of the motion to dismiss, including Defendants' request to sever the claims. *See* Dkt. # 224. And the Court DENIES Defendants' motion for sanctions. *See* Dkt. # 237.

Dated this 4th day of February, 2026.

John H. Chun
John H. Chun
United States District Judge

ORDER - 17