UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SARAH and REGINA ALONSO,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES JACKSON, also known online as "ONISION," LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI," and NESIAMOTU, Inc.,<br><br>Defendants. | CASE NO. 3:25-cv-05594-JHC<br><br>ORDER |

**I**

**INTRODUCTION**

This matter comes before the Court on Defendant Nesiamotu, Inc.'s Motion to Dismiss. *See* Dkt. # 239. The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law. For the reasons below, the Court GRANTS the motion and DISMISSES the claims again Nesiamotu without prejudice.

ORDER - 1

## II

### BACKGROUND

The following background derives from Plaintiffs' Consolidated Third Amended Complaint (CTAC). *See* Dkt. # 193.

Defendant James Jackson operated a YouTube channel under the moniker "Onision," alongside his now-spouse Defendant Lucas Jackson, who went by the online names "Laineybot," "Lainey," or "Kai."[1] Dkt. # 193 ¶¶ 69–70. Dkt. # 193 ¶¶ 69–70. "Onision" is also a trademark owned by Defendant Nesiamotu, Inc., a Washington State corporation formed in 2018 that Defendants used to operate their YouTube channel. *Id*. ¶ 71. James Jackson has operated the "Onision" YouTube account since January 2006. *Id*. ¶ 150. This YouTube account "targeted underage girls and provided content that appealed to that age group, such as comments on body image, appearance, self-identity, suicide ideology and similar topics." *Id*. ¶ 152. James Jackson also began operating online forums, which he promoted in his videos to boost his fandom. *Id.* ¶ 187.

Plaintiffs Regina Alonso and "Sarah" (a pseudonym, see Dkt. # 13) are residents of Florida and Michigan respectively. Dkt. # 193 ¶¶ 60–63. Both Plaintiffs say that they became fans of the Onision YouTube content when they were minors. *See* Dkt. # 193 ¶¶ 205–207 (Plaintiff Regina), *id.* ¶ 245 (Plaintiff Sarah). They say that they began interacting with Lainey via various online networks like Instagram or Twitter. *See* 193 ¶ 207 (Plaintiff Regina), *id.* ¶ 245 (Plaintiff Sarah). Plaintiffs say that the online relationship became sexually suggestive, and that they and Lainey would discuss sexual topics. *Id.* ¶¶ 228, 256, 258–60, 262. Plaintiff Regina

---

[1] When referring to Defendants individually, this order uses interchangeably James Jackson and "Onision," and Lucas Jackson and "Lainey." When referring to James and Lucas Jackson collectively, this order uses "the Jackson Defendants" or "Defendants."

ORDER - 2

says that Lainey would request and receive nude photographs from her when she was a minor. *Id.* ¶¶ 230, 233–234. She says that the Jackson Defendants, in 2015 (when she was a minor), then offered to pay for her travel expenses to Washington state, *id.* ¶¶ 236–37, but that her mother did not permit her to so travel. *Id.* ¶ 240. Plaintiff Sarah says that she, when still a minor, flew to Washington several times to be with the Jackson Defendants at their expense, *id.* ¶¶ 56, 287, 305–06, 308, 310, 331, and that during these trips, Onision, and at times Lainey, would physically touch Sarah in a sexual manner. *Id.* ¶¶ 291–97, 303. When Plaintiff Sarah turned 18 in August 2018, she traveled back to Defendants' residence, where Defendants forced her into a sexual encounter. *Id.* ¶¶ 344–66. She says she was then coerced into signing an NDA before returning to Michigan. *Id.* ¶¶ 369, 374. Sarah made three more visits in 2019. *Id.* ¶¶ 378–79, 382. Later that year, after her final visit, Onision began posting videos online stating that Sarah had sexually assaulted him and was also blackmailing him. *Id.* ¶¶ 384, 390–91, 396.

In 2023, Plaintiffs filed separate suits against Google, its subsidiary YouTube (collectively, the YouTube Defendants), and the Jackson Defendants in Florida and Michigan. Both cases were transferred to separate courts in the United States District Court for the Northern District of California. In May 2024, Plaintiffs filed coordinated Second Amended Complaints in the separate suits. *See* Dkt. # 122 at 1, 13 ¶¶ 66–72 (naming the YouTube and Jackson Defendants in the Second Amended Complaint). It was not until the Third Amended Complaint (not the CTAC), filed February 2025, that Plaintiffs named Defendant Nesiamotu. *See* Dkt. # 182 at 1, 13 ¶ 71. Soon after, in March 2025, Judge James Donato of that District ordered the consolidation of Plaintiffs' cases, *see* Dkt. # 189, and terminated various pending motions to dismiss. *See* Dkt. # 190. Then, in April 2025, Plaintiffs filed the CTAC, which also names Defendant Nesiamotu. *See* Dkt. # 193 at 12, ¶ 71.

ORDER - 3

On June 24, 2025, the court in the Northern District of California granted the YouTube Defendants' motion to dismiss and transferred the case to this District.  *See* Dkt. # 210.  And on February 4th, 2026, this Court granted in part and otherwise denied the Jackson Defendants' motion to dismiss the CTAC, dismissing only Count III.  *See* Dkt. # 257 at 17.

Nesiamotu now moves to dismiss the CTAC under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).  *See* Dkt. # 239.  Nesiamotu also moves for judgment on the pleadings under Rule 12(c).  *Id.*  Nesiamotu contends that (1) this Court lacks subject matter jurisdiction over the claims against it, (2) Plaintiffs failed to serve it properly, and (3) Plaintiffs fail to state a claim.  *See generally id*.  Last, Nesiamotu says that it should be severed as a misjoined party under Federal Rule of Civil Procedure 21.  *See* Dkt. # 239 at 17–19.

### III

#### DISCUSSION

A.    Subject Matter Jurisdiction

Under Rule 12(b)(1), a defendant may move for dismissal for lack of subject-matter jurisdiction.  A district court may not entertain a suit if it lacks subject matter jurisdiction over the action.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Federal question jurisdiction gives district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Diversity of citizenship jurisdiction gives district courts original jurisdiction over all civil actions in which the matter in controversy exceeds $75,000 and, as pertinent here, is between citizens of different states.  28 U.S.C. § 1332.  "The party invoking federal jurisdiction bears the burden of establishing [it]."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

ORDER - 4

Nesiamotu brings a facial attack on jurisdiction under Rule 12(b)(1). "In a facial attack, the [defendant] asserts that the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving such an attack, the court must accept the plaintiff's allegations as true and draw all reasonable inferences in their favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Nesiamotu contends that the Court lacks subject matter jurisdiction because Plaintiffs plead only federal TVPRA and Masha's Law claims against Nesiamotu, and but since they fail to state those claims, the Court lacks subject matter jurisdiction. *See* Dkt. 239 at 9–10. Plaintiffs respond that they do not fail to state their federal law claims, and even so, the parties are in complete diversity and the amount in controversy exceeds $75,000, so the Court possesses subject matter jurisdiction under 28 U.S.C. § 1332. Dkt. # 249 at 15. Nesiamotu does not rebut these points.

The CTAC sufficiently alleges the parties are in complete diversity. *See* Dkt. # 193 ¶¶ 60, 62 (Plaintiffs are citizens of Florida and Michigan respectively); *id.* ¶¶ 69–71 (Jackson Defendants and Nesiamotu are citizens of Washington). And the CTAC alleges that the amount in controversy exceeds $75,000. *See id.* ¶ 78. Thus, the Court possesses subject matter jurisdiction. Plaintiffs need demonstrate only one of the two bases for subject matter jurisdiction. *Cf. Chey v. JPMorgan Chase Bank, N.A.*, 2024 WL 5202775, at *1 (C.D. Cal. Dec. 23, 2024) (court had federal question jurisdiction and this did not need diversity jurisdiction to exercise subject matter jurisdiction).

B.    Service of Process

Under Rule 12(b)(5), a defendant may assert as a defense improper service of process. "Once a defendant challenges service of process, the plaintiff bears the burden of establishing the

ORDER - 5

validity of service of process." *Wick Towing, Inc. v. Northland*, 2016 WL 3461587, at \*2 (W.D. Wash. June 21, 2016). "Where service of process is insufficient, the court has broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant." *Clark v. Washington State Dep't of Health*, 735 F. Supp. 3d 1334, 1349 (W.D. Wash. 2024) (citing *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (internal citation omitted).

Nesiamotu contends that Plaintiffs failed to effect proper service of process because they served the complaint and summons in person on James Jackson, who is not Nesiamotu's registered agent, at the Jackson residence. Dkt. # 239 at 11; Dkt. # 222 at 1 (proof of service). Lucas Jackson says that Nesiamotu is its own registered agent and provides a street address for the entity, the same address as the Jackson residence. Dkt. # 239-3 ¶ 6. Nesiamotu argues that because Plaintiffs did not attempt to serve the registered agent, they cannot effect alternative service of process under Washington law, since they cannot show that Nesiamotu's registered agent (itself) "cannot with reasonable diligence be served." *Id.* (citing RCW 23.95.450).

Plaintiffs agree that Nesiamotu lists itself as its registered agent. *See* Dkt. # 249 at 15–16; *see also* Dkt. # 249-1 at 4 (Washington Secretary of State "annual report" filing in which Nesiamotu lists itself as the registered agent at same street address as in Lucas Jackson's declaration at Dkt. # 239-3 ¶ 6)). But Plaintiffs say that Nesiamotu may not list itself as its own registered agent and, as a result the law permits that alternative service in such a situation. Dkt. # 249 at 16 (citing RCW § 23.95.450). In addition to delivering the complaint and summons to James Jackson personally, Plaintiffs mailed the complaint and summons to Nesiamotu's listed address. Dkt. # 222 at 1 (proof of service indicating that summons was mailed); *id.* at Dkt. # 222-1 (declaration of mailing).

ORDER - 6

One way a plaintiff may serve a corporate defendant is "in the manner prescribed by [Federal Rule of Civil Procedure] 4(e)(1) for serving an individual[.]" Fed. R. Civ. P. 4(h)(1). Serving process on an individual follows the rules of the state where the district court is located. Fed. R. Civ. P. 4(e)(1). In Washington, a corporation (or "represented entity," in the statute's terms) like Nesiamotu may be served "by serving its registered agent," or, if the corporation either lacks a registered agent or the registered agent "cannot with reasonable diligence be served," then "the entity may be served by registered or certified mail, return receipt requested, or by similar commercial delivery service, addressed to the entity at the entity's principal office." RCW 23.95.450.

RCW 23.95.415, which provides for the designation of registered agents by corporations, "does not contain language authorizing a corporation to name itself its own registered agent." *Cf. Patanella v. Aerocet Inc.*, 2021 WL 9626210, at \*2–4 (W.D. Wash. Nov. 24, 2021) (Estudillo, J.) (concluding the plaintiffs properly served the defendant corporation by serving its most recently listed registered agent even though corporation had named itself as registered agent three years before suit). Thus, Nesiamotu lacked a legally cognizable registered agent when Plaintiffs sought to serve process. Accordingly, Plaintiffs could serve process by "registered or certified mail" at the "address of the principal office . . . as shown in the entity's most recent annual report filed by the secretary of state." RCW § 23.95.450. But Plaintiffs did not do so. *See* Dkt. # 222-1 (showing mailing to same address as that listed in Nesiamotu's secretary of state annual report). Plaintiffs apparently attempted to served process via regular first-class mail and not registered or certified mail, return receipt requested. And while Plaintiffs suggest that personal service on James Jackson satisfies the statute because he is an "admitted owner of the company," Dkt. # 249 at 16, Plaintiffs point to no authority permitting service on a corporation by serving its owner, even assuming that James Jackson is in fact the owner.

ORDER - 7

Thus, Plaintiffs have failed to properly serve Nesiamotu.  And as this case has been pending since 2023, and Nesiamotu was named as a defendant over a year ago, the Court exercises its discretion to dismiss the claims against it without prejudice.[2][3]

C.     Citation to nonexistent legal authority

On reply, Nesiamotu notes that one case cited by Plaintiff in support of leave to amend at Dkt. # 249 at 17, "*Allen v. Bayshore Mall*, No. C03-4522, 2006 WL 2520427, at *7 (W.D. Wash. Aug. 29, 2006)" does not exist.  Dkt. # 255 at 9–10.  Nesiamotu suspects that the case may have been confabulated by generative artificial intelligence (AI) because there are two *Allen v. Bayshore Mall* cases from the Northern District of California: 2013 WL 6441504 (N.D. Cal. Dec. 9, 2013) (granting leave to amend) and 2014 WL 1647622 (N.D. Cal. Apr. 23, 2014) (denying summary judgment).  *Id.*  They do not request any relief in connection with this potentially fake case.

---

[2] Even if Plaintiffs had properly served Nesiamotu, it appears that the CTAC fails to state a claim against the entity.  Plaintiffs' argument regarding successor liability principles do not excuse the requirement that they plead facts about Nesiamotu.  The sole allegations about Nesiamotu, which appears only three times in the CTAC, are:

> 71. Defendant Nesiamotu, Inc. is a Washington State corporation which at all times relevant to this case, was owned and operated by James and/or Lucas Jackson.  Nesiamotu was formed on February 12, 2018 and upon information and belief, was the corporation that Onision and Lainey used to publish their content on YouTube.  The "Onision" name trademark is owned by Nesiamotu, Inc.

Dkt. # 193 ¶ 71.  Outside this paragraph, Nesiamotu is not mentioned in the CTAC.  Plaintiffs do not, for example, allege that Nesiamotu is some sort of alter ego for the Jackson Defendants or that the Nesiamotu corporate entity itself participated in or was otherwise connected to Plaintiff Sarah's trafficking.  Nor do they allege facts that would give rise to successor liability.  Without further facts, Plaintiffs' invocation of successor liability principles amounts to an impermissible attempt to use such a theory to survive a motion to dismiss.

[3] Nesiamotu also contends that it should be severed from the case under Federal Rule of Civil Procedure 21 because Plaintiffs cannot show that they meet the requirements for joinder under Federal Rule of Civil Procedure 20.  *See* Dkt. # 239 at 17–19.  But this issue is moot, as the Court is granting Nesiamotu's motion to dismiss.

ORDER - 8

Whether or not generative AI was used, "[c]iting nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court." *United States v. Hayes*, 763 F. Supp. 3d 1054, 1067 (E.D. Cal. 2025), *reconsideration denied*, 2025 WL 1067323 (E.D. Cal. Apr. 9, 2025) (citation omitted). Such conduct is sanctionable. *Id.* at 1071.

The Court agrees that the "*Allen v. Bayshore Mall*" case cited by Plaintiffs cannot be located online and that circumstances suggest, but do not prove, the possibility of improper oversight of generative artificial intelligence or another tool generating text from a large language model. As stated, the submission of misleading legal authority is grounds for sanctions under Rule 11. *See Benshoof v. Chin*, 2025 WL 1414055, at *4, n.3 (W.D. Wash. May 15, 2025). The Court warns Plaintiffs' counsel that it will issue an order to show cause why sanctions should not issue if they again submit fictitious legal authority. *See, e.g.*, Dkt. # 129, *Medal v. Amazon.com Services LLC*, No. 2:23-cv-01975-JHC (W.D. Wash. March 4, 2026) (granting the defendant's motion to show cause relating to use of fictitious legal authority generated by AI).

## IV
### CONCLUSION

For the reasons above, the Court GRANTS Nesiamotu's motion, Dkt. # 239, and DISMISSES the claims against Nesiamotu without prejudice for insufficiency of process. If, notwithstanding this ruling, Plaintiffs consider seeking relief to keep Nesiamotu as a defendant in this matter, the Court cautions them to review (1) the requirements for service of process; (2) any limitations periods that may apply; and (3) the discussion above why the CTAC fails to state a claim against Nesiamotu. The Court DENIES as moot Nesiamotu's request to sever the claims.

//

ORDER - 9

Dated this 17th day of March, 2026.

John H. Chun
United States District Judge

ORDER - 10